Napton, judge,
delivered the opinion of the court.
One of the objections taken in the return to the conditional mandamus, is, that the jury did not take into consideration the advantages of the road to the petitioner Wilkerson, as well as its disadvantages. The order of the county court upon Wilkerson’s complaining of the assessment by the commissioners, was “that a jury of six disinterested householders of Buchanan county, be summoned by the sheriff of said county, to assess the damages or advantages of said road to the said Ross Wilkerson, and make a report according to law,” The jury reported “that after taking into consideration the damages and disadvantages of said road to the said complainant, and find the damages and disadvantages of said road on the said Ross Wilkerson’s land, to be $237 50, ” The statute requires the commissioners or the jury, in assessing the damages, to take into consideration the advantages as well as the disadvantages of the road to the person objecting. It was the duty of the sheriff to have the jury sworn, and we will presume that the law was complied with in this particular. It was the duty of the jury, in complying with the order of the county court, to consider both the advantages and the disadvantages of the road to Wilkerson. The return of the jury in this '¡case, like the order of the court, is not drawn up with technical formal *331 ity ; but it does not lead to an inference that they disregarded their oaths, or failed to comply with the law. They do not say that they took into consideration the advantages of the road to Wilkerson, nor that they failed to do so, and the presumption is that they did their duty. If the return was considered equivocal on this point, the county court had it in their power to ascertain the fact and correct the mistake, if any had been committed. The proceedings could have been set aside, and the jury again charged with the duty of ascertaining the damages. It was not Wilkerson’s duty to object to the sufficiency of the return, if he was satisfied. But the return was received, and no objections are made to it on this ground.
It is highly probable that the term disadvantages, which the jury use in their report, was a clerical blunder. But whether this was so or not could have been easily ascertained by the court to whom the return was made.
The question comes up, it will be observed on a demurrer to the answer of the county court. The answer does not specifically point out any such objection as the one we have just noticed, but merely states that the proceedings in relation to this road, including the assessment and report of the jury, were all illegal ard void. In what respects they were illegal, is not stated. This aseertion would seem to be merely formal, and not deserving any particular examination. It is obvious that the real defence of the county court, and the only one relied upon, was !<that the said road mentioned in said petition, had never been opened, or ordered to be opened, and that the same was vacated by an act of the legislature of this State, passed at the last session. ” This answer was filed on the first day of October, 1847. The report of the commissioners was received, and the road ordered to be opened on the 8th of July, 1845, as appears from the exhibits accompanying the petition for a mandamus. At the August term, 1845, of the county court, a jury was ordered to assess the damages done Wilkerson. Their report waa made at the November term following. So much of this answer as relates to the act of the legislature, passed in the winter of 1846-7, nearly two years after the assessment of the damages, may be considered ag totally irrelevant to the ease. It will not be contended that if the road had been established and opened, the proprietor of the land over which the way passed, would have lost his right to damages by reason of the discontinuance of the highway. If a discontinuance at the end of two years would have this effect, then a discontinuance at the end of fifty years would have the same effect, and this cannot be.
*332 The only portion of the defence of the county court which presents any real difficulty, is the fact relied on by them that the road never was opened, and consequently that Wilkerson has not sustained any actual damage. This presents the question, as to the period of time, when the right to damages vests in the proprietor of the land. Does this right vest when the damages are assessed by the commissioners, and -reported to the county court, or when the jury return their report, and that report is received or not set aside for informality or illegality, or must the proprietor wait until the road is actually opened ? The act requires that the commissioners shall take a grant of the right of way from every owner through whose land the route of the road is located, and then provides that such grants shall vest in the public a right of way over a quantity of land on each side of the centre of the road, at least thirty feet in width. The commissioners are also directed to report the damages, and when any person is dissatisfied with their report, the county court is authorized to have a jury summoned to re-assess such damages, and if the damages found by the jury exceed those found by the commissioners, the court are directed “ to issue a warrant on the county treasury for the amount of damages and costs. It would seem to be quite clear that the legislature intended the right of way to vest in the public, upon the execution of the grant directed to be taken by the commissioners, and the right to the damages to be vested in the proprietor whenever reported by the commissioners or by the jury. For the court upon this event is directed to issue a warrant. There is no direction that the court shall defer the warrant until the road is opened. The legislature evidently did not contemplate a case of this kind. They did not anticipate that the people of a district would apply to them for a road, have commissioners appointed to lay out the same, and after this had been done and juries summoned to assess the damages, the courts of the counties would then decline any further action, and wait until a succeeding legislature would repeal the law. The claim of the petitioner is certainly founded on summum jus, and it looks hard that the county should be compelled to pay for a thing which is of no use to them ; a right of way which they do not intend to use. But this is like the case of any other person who purchases an anticle for which he discovers, after he has bought, that he has no use whatever. It is an in-discrete bargain, but I do not know that the courts have any power to relieve him from it. He is thrown upon the generosity of the person with whom the contract has been made. Upon the return or report of the jury in favor of the petioner, Wilkerson, the public acquired a right *333 of way over his land, and he acquired a vested right to the compensation agreed upon ; but if the public did not see fit to avail themselves of this right, but their agents concluded itbest to discontinue the highway, this does not effect the rights of the petitioner. When he demanded a jury, and the court ordered one, the statute made him responsible for the costs in the event that the jury gave him less damages than had been awarded by the commissioners. Would he have been relieved from the payment of these costs had this been the result of their finding in this case, because the county court saw fit not to have the road opened ? Would such a defence have availed him, when an execution.was levied on his property to collect these costs ? Clearly not. If, then, the verdict fixes his responsibility in case it is against him, the county must be equally bound when the verdict is in his favor.
We observe that this question has been repeatedly decided by the courts of New Hampshire and Massachusetts. The proceedings in those States, preparatory to the establishment of a public highway, may be somewhat different from those prescribed in our statutes. But the cases distinctly recognise the principle that “by the judgment establishing and locating the highway, before any act done towards fitting it for use, the rights of the parties are fixed and vested,55 and the public acquire a right to the public casement as long as it shall be their pleasure to use it. And the right of the owner of the land over which it passes, to his compensation, is complete. ” 2 Met. 519 ; Hampton vs. Coffin, 4 N. H. 517.
The judgment of the circuit court will be reversed, and a mandamus awarded.