[No. 4586.]

DAVID MAHONEY, SOLOMON A. SHARP, AND PETER DONAHUE *v.* SPRING VALLEY WATER WORKS COMPANY, SAMUEL M. WILSON, AND THOMAS I. BERGIN.

SUBMITTING A CONTROVERSY TO ARBITRATION. — If one person is willing to sell property to another, and the latter is willing to buy, but the two cannot agree on a price, there is no contract on which to base a submission to arbitration under the statute.

SUIT ON AN AWARD.—A suit cannot be commenced on an award made under a common-law submission until notice of the award has been given.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

On the 24th day of December, 1866, the plaintiffs owned nearly all of the Rancho Laguna de la Merced, lying partly in

the City and County of San Francisco. Within said rancho lies a lake containing about four hundred acres, called Laguna de la Merced, and the springs which furnish it with a supply of water rise on said rancho. On said 24th of December, the Clear Lake Water Company, a corporation formed for the purpose of supplying the inhabitants of San Francisco with water, commenced proceedings in the County Court to condemn said lake and the streams emptying into the same, and a strip of land around the lake three rods wide. A large number of individuals and corporations were made defendants. Commissioners were appointed to assess the compensation to be paid for the property, who, on the 15th of March, 1873, made a report, in which they awarded two million two hundred and fifty-one thousand three hundred and seven dollars damages. The County Court subsequently reduced the award by the sum of six thousand two hundred and fifty dollars.

The Spring Valley Water Works Company was, on said 24th of December, a corporation formed for the same purpose for which the Clear Lake Water Company was formed, and in 1868 said Spring Valley Water Works Company purchased, with its money, but in the names of William T. Babcock and several others, to hold in trust for itself, from said Clear Lake Water Company, the latter's right and privilege to acquire and condemn the said water and land, and took a conveyance thereof, in the name of said Babcock and others, in trust for its use, or an agreement for the conveyance thereof when the proceedings should result in the ascertainment of damages to be paid, and agreed with said Clear Lake Water Company to pay the amount of damages awarded. After said purchase, the Spring Valley Water Works Company conducted the proceedings in the name of the Clear Lake Water Company, and employed its own attorney to prosecute them, and paid the costs and expenses.

On said state of facts, the plaintiffs commenced this action to recover the sum awarded. The defendants demurred to the complaint, the Court sustained the demurrer, and gave final judgment for the defendants. The plaintiffs appealed from the judgment. The defendants Wilson and Bergin owned a small

interest in the property sought to be condemned, but refused to join in the action, and were therefore made defendants.

*Sol. A. Sharp, John B. Felton*, and *W. H. Patterson*, for the Appellants.

The award is a final judgment. The Spring Valley Water Works thereby acquired a right to and an interest in the property itself, as against the plaintiffs and their co-owners, and the latter to that extent are deprived of the use, enjoyment, and *jus disponendi* of their property, without just compensation, unless they have a corresponding right and interest in the award.

The plaintiffs and their co-owners have no option to refuse to receive the award, and upon its payment the whole property vests—without further act of theirs—in the corporation, and it must be equally bound to comply with the judgment.

There must be a mutuality of obligation; else all such proceedings of condemnation would be unconstitutional and void, and beyond the power of the Legislature. (*South Western R. Co.* v. *Southern & A. Telegraph Co.* 46 Ga. 43; 12 Am. Rep. A. M. R. 585; *Walther* v. *Warner*, 25 Mo. 277; *Wilkerson* v. *Buchanan Co.* 12 Mo. 328; *Hampton* v. *Coffin*, 4 N. H. 517; *Harrington* v. *County Commrs.* 22 Pick. 268; *Inhabitants Westbrook* v. *North*, 2 Greenl. 179; *Commrs. &c.* v. *Carey*, 1 Ohio St. 463.)

*Delos Lake*, also for the Appellants.

*Chas. N. Fox*, for Respondent.

By the Court, McKINSTRY, J.:

1. A water company, formed under the statutes respecting such corporations, cannot prosecute proceedings for the taking of private property for the benefit of the stockholders of the company (as well as for the public use by it represented) *in the name of another company*.

2. A company, having commenced such proceedings, cannot sell and transfer to another water company its right to prosecute

them in the name of the original petitioner, or to acquire the property, nor can the latter company purchase such right.

Were it not for the limitation found in the Constitution of this State requiring that " due compensation " shall be made for private property taken for public uses, the State would be authorized to take private property for such uses without compensation. The right thus to take for public uses is one which pertains to the State by virtue of an authority existing in every sovereignty, and which is called the right of *eminent domain.* It is a power incident to the sovereign power, and from its very nature cannot be, and under our Government has not been, transferred to any person, natural or artificial.

In *Houghton* v. *Austin,* 47 Cal. 655, this Court said : " In the first place, then, it is alleged that the Legislature may and frequently does transfer the power of taking private property for the public use. It is enough to say that laws of the kind referred to have always been defended on the ground that they do not transfer the right of eminent domain, since the Legislature determines the use for which the property is to be taken to be a public use. Thus the Legislature, in effect, declares that the taking of lands for the purposes of a railroad corporation is the application of the land to a public use. The mere valuation of the property, so that the owner shall receive due compensation, is and must be done through subordinate agencies. The judgment, wisdom, and patriotism of the Legislature must be employed in determining the character of the use. This discretion cannot be delegated to others."

The State determines certain uses to be public, and then, since the State must act through agents, delegates the task of ascertaining what particular property is necessary to a use, and what is just compensation to a private proprietor. The supplying of water to the inhabitants of a city is a public use, and the lands of the citizen may be taken for this use, due compensation being made. But in the proceedings provided by law for the ascertainment of the property necessary to be taken for this use, and its value, the corporation takes no part other than to initiate them. A statute which should undertake to confer on a water corporation the power of ascertaining, without limit, *what* prop-

erty was necessary to the public use, to supply which the corporation was organized, and its value, would be an attempt to authorize one person to appropriate the property of another, and would be violative of the constitutional provision that no person shall be deprived of life, liberty, or property, except by due process of law.

By the act " to provide for the incorporation of water companies," the power of adjudging whether the property sought to be taken is necessary to the public use controlled by the corporation, is placed in a Court or judicial officer. In arriving at a conclusion on this subject, the number of persons to be supplied by the corporation, and other incidents connected with its organization and objects, are to be considered. The purpose of the corporation may be to supply a small hamlet, or—as avowed by the articles of incorporation—it may be to supply a great and growing city. The distance of the water source from whence the element is to be conducted—the fact that the corporation is already the owner of water reasonably sufficient to satisfy every demand—these and other circumstances may properly influence the judgment of a Court in determining whether the property sought to be condemned is necessary to the public use.

It follows, from the foregoing, that one water company cannot, under the statute respecting such corporations, prosecute proceedings for the taking of private property *for its own benefit*, (as well as to the public use) in the name of another water company.

A water company—having commenced such proceedings— cannot sell and transfer its right to prosecute them, or to take private property, to another water company, nor can the latter purchase such right.

Such attempted sale and purchase on the part of either corporation is *ultra vires* in the extreme sense, and is a fraud on the Court or judicial officer before whom the proceedings are pending, and whose judgment is employed in determining the necessity of the appropriation to the public use represented by the corporation *petitioner*, not its necessity to a use represented by another corporation.

Even if an assignment of the right to prosecute the proceed-

ings to condemn could be taken by the *Spring Valley Works*, it is plain that it could not be transferred by the Clear Lake Water Company to individuals, in trust or otherwise, since the proceedings could have been commenced, and could be continued, only by a corporation. The complaint alleges that the assignment was made to Wm. F. Babcock, John Parrott, and others "for the use and benefit" of the Spring Valley Works.

The demurrer to the second count of the complaint was properly sustained. It does not contain a statement showing a statutory submission to arbitration. "Parties may submit to arbitration any controversy which might be the subject of a civil action between them, except a question of title to real property in fee or for life." (Code Civil Procedure, sec. 1281.)

No reliance is placed in the second count on the supposed employment of the right of eminent domain by the Spring Valley Works. The plea is in effect a statement that the plaintiffs were willing to sell, and the company last named was willing to purchase the lands "and waters" mentioned in the first count, but that the parties bargaining could not agree on a price. Here was no contract on which to base a submission to arbitration under the statute—no "controversy which might be the subject of a civil action."

Treating the averments of the second count as relating to a common-law submission and award—there is no allegation of *notice of the award*—a necessary pre-requisite to the commencement of a suit upon it. (Morse on Arb. and Award, 580; *Woodbury* v. *Warthy*, 3 Greenl. 85.)

Mr. Justice RHODES did not express an opinion.