The Mayor, etc., of Atlanta *vs.* The Central Railroad Company.

THE MAYOR AND COUNCIL OF THE CITY OF ATLANTA, plaintiff in error, *vs.* THE CENTRAL RAILROAD AND BANKING COMPANY *et al.*, defendants in error.

1. The demurrer, not having been filed by the defendant at the first term of the court, came too late at the trial term.
2. Where the charter of a municipal corporation provides for the assessment of the damages to the owners of lots taken for public use, with the right of appeal by the dissatisfied party to the superior court, it is constitutional.
3. The advantage derived by the owner of land, by reason of its having been taken for public use, cannot be set off against the actual value of the same; but such advantage may be considered in estimating other damage than that resulting from the mere taking of the land.
4. The state of Georgia purchased a tract of land for the purpose of the erection of car-shops and other buildings necessary to the successful operation of the Western and Atlantic Railroad. The mayor and council of the city of Atlanta, under the general authority of their charter to lay out streets, etc., and section 965 of the Code, sought to appropriate a portion of said land for a street:
*Held*, that such contemplated action was properly enjoined.

Equity. Demurrer. Municipal corporations. Constitutional law. Eminent domain. State. Before Judge HOPKINS. Fulton Superior Court. October Term, 1873.

For the facts of this case, see the decision.

COLLIER & COLLIER; P. L. MYNATT; W. T. NEWMAN, city attorney, for plaintiff in error.

A. W. HAMMOND & SON; JULIUS L. BROWN, for defendants.

WARNER, Chief Justice.

This is a bill filed by the complainants against the defendant, praying for an injunction to restrain it from opening a street across a certain described strip or plat of land in the city of Atlanta. The complainants allege that a portion of the land over which the street is to be opened is the property f the state, purchased by her from the Macon and Western

The Mayor, etc., of Atlanta *vs.* The Central Railroad Company.

Railroad Company, for the purpose of giving room for her car-shops and other new and substantial buildings, and for the purpose of carrying on the other business of her Western and Atlantic Railroad, of which the state is the owner. The injunction prayed for was granted. The bill did not waive discovery from the defendant, and it failed to answer. When the cause came on to be heard, the defendant, by its counsel, filed a demurrer to the bill, which the court decided came too late, not having been filed at the return term of the bill, to which the defendant excepted. The court allowed the defendant to make a motion to dismiss the bill for want of equity, which was done, and after argument had upon that motion, it was overruled. The defendant made no further motion in the case, and on the filing the affidavit of one of the complainants, as required by the Code, an order taking the bill *pro confesso* was granted, and a decree rendered making the injunction prayed for perpetual, whereupon the defendant excepted.

1. The demurrer not having been filed by the defendant at the first term of the court, it came too late at the trial term of the bill: Code, sec. 4191.

2. Two questions are made by the record in this case: First, whether the charter of the defendant under which it claims the right to take private property for the purpose of opening, laying out, widening, straightening, or otherwise changing the streets and alleys in the city of Atlanta, is a valid constitutional law? Second, whether the defendant has the power and authority delegated to it to take the property of the state, purchased by her for a specific object, for the purpose of opening and laying out a street through or over it, without first having obtained special authority from the state to do so? The 11th section of the act of 1859, which confers the authority on the mayor and city council of the city of Atlanta to open and lay out, to widen, straighten, or otherwise change streets and alleys, provides that whenever the said mayor and council shall exercise the authority to them delegated, they shall appoint two freeholders, and the owner or owners of the

lots fronting on said streets or alleys, shall, on five days' notice, appoint two freeholders, who shall proceed to assess the damages sustained, or the advantages derived, by the owner or owners of said lots in consequence of the opening, widening, straightening, or otherwise changing said streets or alleys, and in case said assessors cannot agree, they shall select a fifth freeholder; the said assessors to take an oath that they will faithfully discharge their duties, and either party to have the right to enter an appeal to the superior court of Fulton within ten days from the rendition of said award; the mayor and council of said city of Atlanta to have power and authority to levy, collect and enforce the final award or judgment, in each and every case, by execution against the owner or owners of said lots, where the same is found to be advantageous to said owners. The act provides for the appointment of assessors to assess the damages sustained, or the advantages derived, by the owners of lots in consequence of the opening of streets, etc., and provides for an appeal to the superior court within ten days from the award of the assessors. It is true, the act does not, in express terms, declare in what manner the judgment on the appeal trial shall be enforced for the damages sustained by the owner of the property taken, but the legal intendment of the act, in view of the general law of the state, undoubtedly is, that it should be enforced in the same manner as other common law judgments are enforced. When the actual damage sustained by the owner of the property taken, in consequence of opening the streets, (wholly independent of the benefit or advantage derived by the owner,) shall have been ascertained by the award or judgment of the superior court, on appeal, as provided by the act, such damage must be paid before the city can proceed to take possession of the owner's property and appropriate it for the use of the public as a street. Until the actual value of the land, or other property taken for the use of the public, has been paid for, the owner thereof may stand upon his legal rights thereto, and assert the same in the courts, by any appropriate remedy. Inasmuch, therefore, as the defendant's charter provides a

lawful mode to ascertain the actual damage sustained by the owners of lots taken for streets in the city by an appeal to the superior court in which a legal and impartial judgment can be rendered, we are of the opinion that the defendant's charter is not unconstitutional and void.    This case differs from that of *The Southwestern Railroad Company vs. The Southern and Atlantic Telegraph Company*, 46 *Georgia Reports*, 43.    In that case there was no provision made in the act of the general assembly for an appeal to the superior court, and no provision made whereby the damages sustained could be ascertained by the judgment of any court according to the law of the land.

3. In the case of *Jones vs. The Wills Valley Railroad Company*, 30 *Georgia Reports*, 43, and in the case of *The Selma, Rome and Dalton Railroad Company vs. Redwine*, 51 *Georgia*, 470, this court held that the benefit and advantage derived by the owner of land when taken for the use of the public, could not be set-off against the actual value of the land taken as part payment therefor ; but if the owner of the land so taken, sustained other damage over and above the actual value of the land taken for the use of the public, then the benefit and advantage derived by the owner might be considered in estimating the amount of such other damage so claimed over and above the actual value of the land.    According to this ruling of the court in the cases before cited, so much of the defendant's charter as provides that the mayor and council of the city shall have power and authority to levy, collect, and enforce the final award or judgment in each and every case, by execution against the owner or owners of said lots when the same is found to be advantageous to said owners, is illegal and void.

4. Has the city of Atlanta, a municipal corporation created by the state, and deriving all its privileges therefrom, the power and authority under its charter to take the property of the state, owned by her, and purchased for a specific object, as alleged in the complainant's bill, for the purpose of appropriating the same for a public street?    The land of the state

sought to be appropriated by the city for a street, was purchased by her to give room for her car shops and other substantial buildings, for the purpose of carrying on the business of her state railroad. It is true the state has leased her road for a term of years, but she is the owner thereof; the fee simple title thereto is still in her as the sovereign of the people of the whole state, including the city of Atlanta. This case presents the extraordinary spectacle of the *creature* of the state attempting to exercise its power and authority derived from the state against the state herself, without her consent. This claim is based on the 965th section of the Code which declares that all the public road laws and penal laws touching the railroads of this state, whether to obligate or protect, apply to the state road, unless specially excepted or some other provision is prescribed in lieu of some one or more thereof. The laying out the street in question is not simply crossing the track of the state road but it appropriates the land of the state, purchased and owned by her, to give room for her car shops and other buildings, for the purpose of carrying on the business of her road. The argument for the defendant is, that inasmuch as the land was purchased by the state and owned by her for the purpose of carrying on the business of her railroad, therefore the defendant has the right to open a street over and through it under the provisions of the Code, before cited. To lay out a road or street across the state's railroad track is one thing; to appropriate the land purchased and owned by the state for the erection of car shops and other buildings to carry on the business of her railroad, without her consent, is another and different question. With equal propriety and claim of right could the defendant, under the pretext of widening Marietta street, take ten feet of the state captol building, purchased to transact the public business of the state, as to take the land in question purchased to carry on the business of her railroad. If the defendant has not the power and authority to take the one, without the expressed consent of the state, neither has it the power and authority to take the other, without the express authority of the state to

do so. In delegating the power and authority to the defend-
ant to lay out streets, etc., for the benefit of the city, the state
cannot be presumed to have granted the power and authority
to do so as against her own sovereign rights over her own
property without first having obtained her consent. In view
of the facts as disclosed by the record in this case, we find no
error in the judgment of the court in granting a perpetual in-
junction restraining the defendant from laying out the street
over and through the property of the state, or any part there-
of, as specified in the complainant's bill.

Let the judgment of the court below be affirmed.